KIRSTEIN HOLDING COMPANY *vs.* BANGOR VERITAS, INC.

Penobscot.        Opinion, January 9, 1933.

*A. M. Rudman,* for plaintiff.
*Andrews, Nelson & Gardiner,* for defendant.

SITTING: PATTANGALL, C. J., STURGIS, BARNES, THAXTER, JJ.
PHILBROOK, A. R. J.

STURGIS, J.   This is an action of forcible entry and detainer brought up on report upon so much of the evidence as is legally admissible.

The Kirstein Holding Company, a corporation, owns the land and buildings known as and numbered 35 on Main Street in Bangor, now occupied by the defendant. When purchased, the property was subject to a lease to the Schulte-United, Inc., a New York corporation, for the term beginning November 1, 1928, and ending February 28, 1949. By the terms of the indenture, the lessee had the right to sublet and to assign without release from its own obligations. There was no provision for a re-entry or forfeiture by the landlord in case the tenant became bankrupt or its estate otherwise devolved by operation of law. The ordinary covenants of a lease were included, but are not here material.

On February 5, 1931, the Schulte-United, Inc. having been adjudicated a bankrupt, the Irving Trust Company of New York

City was duly appointed and qualified as its Trustee. The bankrupt estate included about two hundred leases, twelve properties owned in fee, and the furniture, fixtures and merchandise in eighty-nine stores located in the United States and Canada.

The Trustee occupied the leased premises and paid rent in the amount stipulated in the lease until March 1, 1932, when the defendant corporation, to which it had assigned the lease, entered and took possession. Contending that the Trustee had lost its right to affirm the lease as an asset of the bankrupt estate prior to the assignment, the plaintiff refused to recognize the defendant's right of possession and instituted this action.

It appears that, following negotiations covering a period of some little time, on August 7, 1931, one David A. Schulte filed with the Creditors' Committee of Schulte-United, Inc. his offer for all the assets of the bankrupt estate, reserving the right, however, to select such lease-holds as he desired and reject the others, the leases on those taken to be assigned to him or his designee as he might elect. This offer was received by the Trustee on September 1, 1931, but it was not until October 23, 1931, that the Referee in Bankruptcy approved it and ordered that it be accepted. The offer called for written notice of acceptance on or before December 1, 1931, and that, in case thereof, the agreement should be closed not less than thirty (30) days nor more than forty (40) days thereafter. It is evident that this condition was complied with. On December 17, 1931, the Trustee wrote this plaintiff that it had agreed to assign this lease to D. A. Schulte or his designee and intended to make the transfer on December 31, following. The record shows that an assignment of the lease to the defendant, the Bangor Veritas, Inc., duly designated to receive the same, was made as of December 30, 1931. When the assignment was delivered does not appear and is not material to the case. It was recorded February 3, 1932, and was undoubtedly in the defendant's possession prior to that time.

It is well settled that upon the bankruptcy of the tenant, provided that by the terms of the lease the tenancy is not thereby terminated, the leasehold interest of the bankrupt passes to the trustee, if he elects to accept it, as an asset of the estate to be reduced into money by assignment or otherwise for distribution

among the creditors. A few of the many cases supporting this rule are *First Nat. Bank* v. *Lasater*, 196 U. S., 115, 25 S. Ct., 206, 49 L. Ed., 408; *Dushane* v. *Beall*, 161 U. S., 513, 16 S. Ct., 637, 40 L. Ed., 791; *Trust Company* v. *Railroad*, 150 U. S., 289, 14 S. Ct., 86, 37 L. Ed., 1085; *In re Frazin*, 183 Fed. Rep., 28; *Waston* v. *Merrill*, 136 Fed. Rep., 358; *English* v. *Richardson*, 80 N. H., 364, 117 A., 287; *Dow* v. *Bradley*, 110 Me., 249, 85 A., 896; *Fleming* v. *Courtenay*, 98 Me., 401, 57 A., 592.

It is equally well settled that, if the Trustee does not accept the property of the bankrupt as an asset of his estate within a reasonable time, he is deemed to have elected to reject it and the title to the asset, whatever it is, remains in the bankrupt. A lease is not terminated by the adjudication in bankruptcy of the tenant unless there be provision to that effect in the indenture, and, if the Trustee renounces the lease, the relations of landlord and tenant between the bankrupt and his lessor are not disturbed, the bankrupt retaining "the term on precisely the same footing as before, with the right to occupy and the obligation to pay rent." *In re Roth*, 181 Fed. Rep., 667; *In re Scruggs*, 205 Fed. Rep., 673; *In re Sherwoods, Inc.*, 210 Fed. Rep., 754; *English* v. *Richardson*, supra. It necessarily follows that, if the Trustee once makes his election to renounce the lease as an asset of the bankrupt estate his interest in it is terminated and he has no further concern with it. *In re Sapinsky*, 206 Fed. Rep., 523, 524. A subsequent attempted assignment of it by the Trustee is, of course, a nullity.

Support for the plaintiff's claim that its lease with Schulte-United, Inc. was rejected by the Irving Trust Company is entirely lacking in this record. During the early months of its administration of the bankrupt estate, the Trustee several times notified the landlord that the right of election to affirm or disaffirm the lease was reserved and postponed because of the complicated nature of the estate. This asset was but one of many. Necessarily some few months passed before its worth could be ascertained. In fact, there is no indication that it had even a possible sale value until August 7, 1931, when the D. A. Schulte offer was made with its reservations and conditions. Until that offer was confirmed by the creditors and approved by the Referee in Bankruptcy, the Trustee could not and did not accept it. After that date, considering the

magnitude of the transaction, the many items of property involved and the legal formalities necessarily to be observed, the transaction was closed with creditable dispatch and, when, for the first time, the Trustee received definite assurance that this lease was not a burden, it accepted it as an asset for the creditors. The letter of the Trustee of December 17, 1931, warrants the inference that it had elected to affirm the lease at that time. We are not of opinion that the delay was unreasonable.

There is no merit in the contention that an unreasonable delay resulted from a delegation of the Trustee's right of election to D. A. Schulte. It is true that the Trustee awaited the purchaser's election to buy the lease before affirming it, but this was not a delegation of its right of election and the postponement was justified. The lease became an asset of the bankrupt estate only through its affirmance by the Trustee acting in its official capacity.

The plaintiff shows no prejudice or loss in its complaints that it was not fully and promptly informed of the various steps and proceedings taken by the Trustee in effecting the sale of the assets of the Schulte-United, Inc. or as to when the election to affirm this lease was made. The Trustee was fully within its rights in occupying the premises and paying the rent. *Crowe* v. *Bauman,* 190 Fed. Rep., 399; *In re Sherwoods, Inc.,* supra. Express notice was given that the election would be postponed until the value of the lease as an asset was determined. If the lease had been disaffirmed, Schulte-United, Inc. would have continued as a tenant. *In re Roth et cetera,* supra. When the lease was affirmed, the Trustee was substituted as lessee and thereafter its assignee succeeded to its rights and liabilities. There was, at no time, any default in the conditions of the lease.

The defendant, on this Report, having in the eyes of the law all the rights of a lessee in the premises at 35 Main Street in Bangor, owned by the plaintiff, it can not be deemed "a disseizor who has not acquired any claim by possession and improvement." R. S., Chap. 108, Sec. 1. This action of forcible entry and detainer, based on that statute, can not be maintained.

*Judgment for the defendant.*