## Croll v. Forrest Laundry et al.

*Delbert T. Kirk,* for appellant.

*Wayland H. Elsbree, of White & Staples,* for appellees.

CRUMLISH, J., January 23, 1942.—This is an appeal by claimant from the action of the Workmen's Compensation Board in refusing to grant the prayer of a petition filed pursuant to the provisions of section 413 of The Pennsylvania Workmen's Compensation Act of June 21, 1939, P. L. 520.

Since the history of the case is quite complicated, we feel that a proper appreciation of the issue involved can be had only by considering its entire history. Claimant was injured on March 8, 1933, when she fell and struck her right elbow. Thereafter claimant and defendant entered into an open agreement for total disability, which remained in effect until August 11, 1936, on which date defendant petitioned for modification of the agreement, alleging that claimant's disability was confined to the loss of the use of her right arm. Claimant filed an answer denying the allegations of the petition and averring that she was still totally disabled. At the subsequent hearing, which was held on September 14, 1936, claimant was represented by one Joseph R. Burns, who was not a member of the bar. At the hearing counsel for defendant and the said Joseph R. Burns entered into a stipulation that claimant's disability had resolved itself into the loss

of the use of her right arm, and on the basis of this stipulation Referee Casey entered an award for 215 weeks for the total loss of the use of claimant's right arm, the award being dated September 17, 1936.

Thereafter defendant paid compensation pursuant to the award until April 14, 1937, on which date claimant filed a petition to modify the "agreement", i. e., the award of Referee Casey, on the ground that her disability had increased. Defendant filed an answer denying the allegations of the petition. It further appears that, at the time of the filing of claimant's petition, the 215-week period under the award of Referee Casey had almost expired, and it was averred by defendant in its answer that full payment had been tendered pursuant to the award but that claimant had refused to execute a final receipt. At the subsequent hearing claimant introduced evidence tending to prove that she was suffering from mental disorders so as to be totally disabled, and that this condition was the result of the accident of March 8, 1933. Defendant introduced evidence to controvert this, and Referee Kerwick found for claimant, making certain findings of fact, the most important of which were as follows:

"5. That sometime before April 14, 1937, claimant's disability changed to a total disability which continued up to and including the time of the hearing, and may continue for some indefinite time in the future.

"6. That claimant's conditions, as herein found, while not wholly the result of the accident which she sustained in this case are in a measure due to the same. The fact that she is past 50 years of age; economic conditions in general; the fact that she has recently gone through her menopause; as well as the condition of her arm as a result of the accident, have all contributed to her present condition."

On appeal, the Workmen's Compensation Board held that claimant's evidence was sufficient to sustain the award and affirmed without modifying or changing the

referee's findings of fact. The case was then appealed to this court and we affirmed, speaking through the writer, but it now appears that we fell into several errors.

The first mistake was in assuming that claimant could file a petition to modify an award which had been made under section 306(c) of The Pennsylvania Workmen's Compensation Act. This assumption was based on the ruling in Higgins v. Commonwealth C. & C. Co. et al., 106 Pa. Superior Ct. 1 (1932), where claimant's petition was considered as one to modify an award made under sec. 306(c), and where it was said (pp. 10, 11):

"Under the liberal attitude courts are authorized, by the language of the act, to take toward pleadings in a compensation case, we may consider the petition as one to modify the award." Compare also Johnson v. Purnell et al., 131 Pa. Superior Ct. 230 (1938).

However, the Superior Court indicated in its opinion that an award under section 306(c) from which no appeal has been taken is conclusive, and failure so to hold was "a fundamental defect." See Croll v. Miller et al., 133 Pa. Superior Ct. 448, 454.

We next dealt with the case as presenting solely the question whether or not there was legally competent evidence to support the findings of the board and whether the law had been properly applied to the findings of fact. We so concluded, and in support thereof quoted the following medical testimony of Dr. Clouting, a neurologist:

"Q. Have you any opinion as to the extent of her disability generally?

A. To tell you the truth I wouldn't employ her to do anything at all for me now.

Q. You feel at present she is totally disabled?

A. Yes, I certainly do. She is disabled now, she is weak, has lost weight, and hears voices and sees visions and I think that is enough to disable anybody. We

usually find them in the psychopathic ward after symptoms like this.

Q. Doctor, as a result of your examination, and as a result of the history of this accident, the complaint of Nora Croll, and her testimony this morning, are you able to form an opinion as to the cause of her disability?

A. This is the primary cause of it (indicating the elbow). I think it is the direct result of the aftermath of her elbow, pain, with the continuous pain she is suffering, the nervous symptoms, the mental symptoms, all you see now are the direct aftermath of the whole thing."

Again on cross-examination, he testified as follows:

"Q. I suppose her present condition might be attributed to a mental disturbance that might be the result of any number of different things?

A. I tried to go into her case fully to give a disinterested opinion because I don't care which way the case goes. You take a woman who has had a severe injury, in a case like this until worrying about things like this, she has had pain and loss of sleep and weight and I think her present state is just a result or aftermath of the elbow. That is my judgment. Somebody else might differ with me, but I want to tell what I think is the truth."

We also quoted at length from the testimony of Dr. Mecluskey, claimant's family physician, as follows:

"Q. Now, doctor, what is your diagnosis of Mrs. Croll's condition?

A. A neurotic mental case.

Q. Are you in a position to give an opinion as to the cause of Mrs. Croll's present disability, based on your examinations, treatment and history of the accident, and the nature of her complaints?

A. I am.

Q. In your opinion, doctor, what do you attribute her present condition to?

A. (After objection and exception). I attribute it to her accident, based on the history.

Q. When you say you attribute her disability to the accident, you mean solely to the accident, or to the results produced by the accident?

A. Well, yes, the accident produced the results, and the results produced the mental condition.

Q. Describe the results.

A. The results are the inability to sleep, probably due to the pain, produced a nervous condition, she has in my opinion a more nervous condition than she had when I first saw her. Of course, I haven't seen her from March 26th until the other day when I saw her.

Q. Doctor, in your opinion, what was the extent of the physical disability of Mrs. Croll when you examined her on November 11?

A. (After objection and exception). She was totally disabled for any industrial occupation."

It now appears that this testimony was legally insufficient as Judge Cunningham said on appeal (Croll v. Miller et al., supra, at page 456) :

"Here, there was neither a finding (*nor evidence which would support one*) bringing this case within the ruling under discussion", i. e., that would justify an award for total disability. (Italics supplied.)

Finally (and we believe this to be the basis of the decision), the Superior Court pointed out that claimant's disability was the result of several factors, only one of which was the result of the accident, and such a finding was insufficient to sustain the award to claimant under the ruling in Lente v. Luci, 275 Pa. 217 (1922). We fell into error here because we reasoned that it is sufficient that the accident is a superinducing cause (and we thought that was established by the above-quoted medical testimony), i. e., that it is one of two or more factors producing the disability. Compare Clark v. Lehigh Valley Coal Co., 264 Pa. 529 (1919) ; Yodis v. Philadelphia and Reading Coal & Iron Co., 269 Pa. 586 (1921) ; Calderwood v. Consolidated

Lumber & Supply Co., 91 Pa. Superior Ct. 189 (1927) ;
Honis v. Coxe Bros. & Co., Inc., 95 Pa. Superior Ct.
209 (1929) ; Jones v. United Iron & Metal Co., 99 Pa.
Superior Ct. 394 (1930) ; McCoy v. Spriggs, 102 Pa.
Superior Ct. 500 (1931) ; Kotkoskie v. Northwestern
Mining & Exchange Co. of Erie, Pa., 105 Pa. Supe-
rior Ct. 480 (1932) , and many other cases too numerous
to cite. See Crispin v. Leedom & Worrall Co. et al.,
142 Pa. Superior Ct. 1 (1940) , where Judge Cunning-
ham analyzed practically all the cases dealing with the
accidental aggravation of existing organic ailments.

However, the Superior Court held in the instant case
that claimant was entitled to compensation only for
the loss of the use of her arm and in so ruling said
(p. 457) :

"When claimant accepts the compensation tendered
for the two weeks from April 14 to 28, 1937, she will
have received the full amount legally due her."

Subsequently, the Supreme Court refused an allo-
catur, and the case apparently was terminated. How-
ever, on June 19, 1939, approximately seven months
after the decision of the Superior Court, claimant filed
this petition alleging that the award of Referee Casey
of September 17, 1936, was in reality an agreement
and, as such, should be set aside, under the provisions
of the first paragraph of section 413, because it was
based on a mistake of fact in that claimant had been
totally disabled at the time of the award.

At the hearing on this petition, counsel for claimant
made several offers of proof tending to show that the
award of Referee Casey was based on a stipulation
which was entered into because of a mistake of fact.
Defendant objected on the ground that the issue sought
to be raised had been determined by the decision of the
Superior Court and that the matter was res judicata.
Defendant's objections were sustained, and on appeal
the Workmen's Compensation Board affirmed the de-
cision of the referee.

There are several reasons why this decision should be affirmed. In the first place, it is well established that a petition filed under the first paragraph of section 413 must be filed during the lifetime of the agreement, since the first paragraph of section 413 applies only to agreements which are still in existence: Zupicick v. P. & R. C. & I. Co., 108 Pa. Superior Ct. 165. And since the agreement which claimant seeks to set aside has been terminated by virtue of the decision of the Superior Court, it is clear that there is no longer any basis for the filing of a petition under the first paragraph of section 413.

It is true that there is an exception to the rule of the Zupicick case, Kitchen v. Miller Bros. Co. et al., 115 Pa. Superior Ct. 141 (1934); Rednock v. Westmoreland Coal Co., 132 Pa. Superior Ct. 89 (1938), but obviously this cannot avail claimant. Claimant contends that had there been no mistake of fact the "agreement" would still be in existence. Assuming but not deciding that the award of Referee Casey was merely an agreement, and that it was based on a mistake of fact, it remains that the agreement was ultimately terminated by the decision of the Superior Court, which held that claimant was entitled only to an award for the loss of the use of her arm. Certainly it cannot be said that this agreement would still be in existence had the provisions of the law been observed.

The result is even clearer if we consider the effect of granting the relief for which claimant prays. Under the law it is well established that when a petition is filed to set aside an agreement or a final receipt the compensation authorities may not merely set aside the agreement or the final receipt, but they must take further steps to ascertain the amount to which claimant is entitled and enter an award accordingly: Szabo v. State Workmen's Insurance Fund et al., 110 Pa. Superior Ct. 8; Vetrulli v. Wallin Concrete Corp. et al., 144 Pa. Superior Ct. 73.

Hence if the referee and board had ruled in claimant's favor it would have been their duty to make an award covering claimant's present disability. In order to do this they would have had to determine whether claimant's disability is total or is confined to the loss of the use of her arm. This was the very issue presented in the previous hearing, which culminated in the decision of the Superior Court. Hence to grant the relief sought would not only violate the principles of res judicata but would amount to overruling the decision of the Superior Court. Obviously the compensation authorities acted properly in denying the prayer of this petition.

While there is no case which is factually the same as the instant case, the one which most resembles it is Melody v. Bornot, Inc., et al., 112 Pa. Superior Ct. 174. There it appeared that claimant was injured and thereafter entered into an open agreement for total disability. Subsequently, on the petition of defendant, the agreement was terminated, but within one year of the last payment of compensation claimant petitioned for an additional award under the provisions of the second paragraph of section 413. Her petition was denied, and she appealed to Common Pleas Court No. 1, of Philadelphia County, and while this appeal was pending claimant filed with the board a petition, apparently under section 426, for a hearing de novo, which was denied. From this action, claimant appealed to the same court, which likewise dismissed the petition. She then appealed to the Superior Court, but subsequently withdrew her appeal. Thereafter, and more than two years after the last payment of compensation, and more than one year after the termination by the board of the agreement, she filed three petitions with the board to: (a) Reconsider the former petition for a hearing de novo; (b) reinstate the agreement; and (c) to modify the agreement to conform with averments in the "(b)" petition. While the petitions were pending the personnel of the board changed and the new board dis-

missed petitions "(*a*)" and "(*b*)" but advised claimant to file a new petition under the first paragraph of section 413. This was done, and the board then proceeded to set aside the original agreement, holding that it had been based on a mistake of fact, and further holding that the termination of the agreement had likewise been due to a mistake of fact. Accordingly an order was entered for the resumption of payments for total disability. Defendant then appealed to Common Pleas Court No. 2, of Philadelphia County, which reversed the board. On appeal to the Superior Court the decision of Common Pleas Court No. 2 was affirmed. The Superior Court said that the proceeding was simply an attempt to shift the issue from the second paragraph of section 413 where it belonged to the first paragraph of section 413. Such a shift in position was legally impossible because the orignal agreement had been finally terminated, and hence under the rule of the Zupicick case, supra, could not be reviewed. Although the controversy arose in a slightly different way, it is apparent that the issue in Melody v. Bornot, Inc., et al., supra, is the same as in the instant case, and the holding is therefore controlling.

We may also point out that under the provisions of The Pennsylvania Workmen's Compensation Act of June 21, 1939, P. L. 520, petitions filed under the first paragraph of section 413 must be filed within one year of the last payment of compensation. This limitation apparently would operate to bar any relief in this case, since the petition of claimant was filed more than one year after the expiration of the original award of Referee Casey: DeJoseph v. Standard Steel Car Co. et al., 99 Pa. Superior Ct. 497; Vetrulli v. Wallin Concrete Corp. et al., supra. However, in view of what has already been said, there is no need to consider this phase of the case.

Considering all the facts in this case, it is apparent that claimant's contentions have been fully heard and have been determined against her. We have carefully

558

considered the matter and can only reach the conclusion that claimant has had her day in court and must abide by the result as determined by the decision of the Superior Court.